IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PRENTIS RUPERT                                                                         PLAINTIFF

v.                              CASE NO. 3:15-CV-00022 BSM

LARRY MILLS and
SUSAN COX                                                                             DEFENDANTS

## VERDICT

This case was tried to the bench on August 18, 2016.  Having listened to and observed

the witnesses, and having reviewed the exhibits offered into evidence, verdict is entered for

defendant Susan Cox on plaintiff Prentis Rupert's deliberate indifference claim.  Verdict is

entered for defendant Larry Mills on Rupert's due process claim against Mills in his

individual capacity.  Verdict is entered for Rupert on his due process claim against Mills in

his official capacity, and Rupert is awarded damages in the amount of $5750 against Poinsett

County, Arkansas.

## I. SUSAN COX

Verdict is entered for Cox on Rupert's deliberate indifference claim because Rupert

has failed to meet his burden of proof on this claim.

Rupert was an inmate at the Poinsett County, Arkansas Jail for approximately 8 1/2

months during 2014-15.  Cox is the jail's nurse.  On September 25, 2014, a few months after

entering the jail, Rupert requested medical attention, complaining of weight loss, headaches,

and back aches.  Cox referred Rupert to the Arkansas Department of Health, where routine

blood work was done on October 4.  The blood test revealed that Rupert was infected with

the hepatitis C antibody.

On October 20, after receiving a medical request from Rupert, Cox arranged for Rupert to be seen at the Harrisburg Clinic to assess his condition. Rupert was seen at the clinic on November 12. After that visit, Rupert made at least two requests regarding his blood work. He was seen again at the Harrisburg Clinic on January 6, 2015. During his detention at the jail, Rupert received no medication for his hepatitis C diagnosis and never saw a specialist.

"A prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). To prove deliberate indifference, Rupert must show that he suffered from an objectively serious medical need and that Cox was aware of that need and deliberately disregarded it. *Id.* Cox does not dispute that Rupert has a serious medical condition. Rupert, however, has not shown that Cox deliberately disregarded his medical need. To prove this, he has to meet "an extremely high standard that requires a mental state of 'more...than gross negligence.'" *Id.* In fact, to prove that Cox deliberately disregarded Rupert's medical condition, he must show that Cox had a mental state that was "akin to criminal recklessness." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).

Cox's actions do not satisfy the deliberate indifference standard because she was responsive to Rupert's medical needs. Indeed, Cox referred Rupert for treatment on three occasions, including two referrals for treatment regarding his hepatitis C diagnosis.

## II.  LARRY MILLS

Verdict is entered for Mills on Rupert's due process claim against Mills in his individual capacity, and verdict is entered for Rupert on his due process claim against Mills in his official capacity.

Mills is the Poinsett County Sheriff and has been the sheriff for approximately twenty years. As the sheriff, Mills is responsible for running the county jail, which includes assuring the well-being of inmates and enforcing the jail's written policy. Mills was the sheriff during the time that Rupert was incarcerated in Poinsett County.

The jail's written policy, which was introduced as plaintiff's exhibit 1, explains the process that must be followed when an inmate is disciplined. This policy is constitutional because it provides appropriate due process to inmates. *See Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (constitutional procedures include advance written notice of disciplinary charges, an opportunity to present a defense and call witnesses, and a written statement of the evidence and reasons for discipline); Poinsett County Detention Center Policy and Procedure Manual, Ex. 1. Despite having a constitutional discipline policy, the jail clearly had a custom or practice of disregarding its written policy and depriving inmates of constitutionally protected due process rights.

Rupert testified that he hit another inmate and was placed in isolation on July 5, 2014. His initial lockdown was to last three days. At some point during his three-day lockdown, a jail administrator viewed the video tape of the event and decided to extend his lockdown for another ten days. Rupert, who was a pretrial detainee, was never given advance written notice of the disciplinary charge or an opportunity to see the videotape forming the basis of

3

his extended lockdown; was never given an opportunity to present a defense or call witnesses; and was never given a written statement of the evidence and the reasons for discipline, as required by *Dible*.

Hunter Rosamond, another former pretrial detainee at the Poinsett County Jail, testified that he was placed on lockdown approximately ten times. He stated that, while on lockdown, inmates are required to remain in their cells 24 hours per day (as compared to all other inmates who are confined to their cells 23 hours per day), are not allowed visitation, are not allowed commissary privileges, and may have their food portions reduced. Rosamond never received any of the due process required by *Dible* when he was placed in isolation. On multiple occasions, when he felt his lockdown was unjust, he prepared written requests to appeal, but those requests came back stating that he had to serve ten days. On a number of occasions, he asked to speak with the sheriff, but he was never allowed to do so. During the 11 1/2 months that Rosamond was in the jail, he saw many inmates get placed in isolation, none of whom were given due process.

Mills did not dispute the testimony given by Rupert and Rosamond. He also acknowledged that he is the ultimate decision-maker at the jail and that he is familiar with the jail's written policy. He was not aware of the cases involving either Mills or Rosamond because the jail administrator would have handled those cases. Since becoming aware of these complaints, however, measures have been taken to address the issues presented by Rupert.

Granting Rupert a verdict against Mills in his individual capacity would be

inappropriate because the record does not prove, by a preponderance of the evidence, that Mills actually knew that these deprivations were taking place. *See Weaver v. Lincoln County, Nebraska*, 388 F.3d 601, 606-07 (8th Cir. 2004) (plaintiff must show that supervisor had notice that the training and supervision were inadequate and likely to result in a constitutional deprivation). Although one could argue that the sheriff must have directed the jailers to insulate him from their unconstitutional actions, this proposition has not been proven by a preponderance of the evidence. No witness testified that Mills was provided any information regarding the deprivations, and Mills testified specifically that he was not aware of the deprivations. Therefore, Rupert's claim against Mills in his individual capacity fails.

A verdict against Mills in his official capacity is appropriate because he failed to train his jailers as to the procedures required when disciplining inmates. *See Parrish v. Ball*, 594 F. 3d 993, 997 (8th Cir. 2010)(a municipality can be held liable when training practices are inadequate, the failure to train was a conscious choice, and such failure actually caused plaintiff's injury). First, it is clear that the training practices at the jail were inadequate because Mills was aware of the jail's written discipline policy, which passes constitutional muster, but nothing indicates the jailers were aware of the policy. By a preponderance of the evidence, it has been shown that the jailers routinely deprived inmates of their due process rights and nothing presented at trial or in the record indicates the jailers were ever trained as to the jail's policy. Second, the sheer pervasiveness of the deprivations supports Rupert's position that the failure to train was a conscious choice. This is especially true because no evidence was offered in opposition to Rupert's position on this issue. Third, it is clear that

Rupert's damages were actually caused by Mills's failure to train his jailers because Rupert's due process rights were violated when he was placed in isolation for thirteen days without redress.

For the violation of Rupert's right to due process, he is awarded damages in the amount of $5750 against Poinsett County, Arkansas. He is awarded $500 for each day that he was in isolation, after the initial 36 hours ($500 x 11.5 = $5750). The first 36 hours are excluded because the jail's written policy required a hearing within 36 hours of the time that Rupert was placed on lockdown.

In awarding these damages, the following testimony was found to be the most compelling. First, Rupert testified that the only penalty he received was his isolation from other inmates. Although Rosamond testified about other penalties faced by inmates on lockdown, Rupert did not testify that he faced any penalty other than being isolated for an additional hour per day. Second, the sheriff was very forthright in testifying that his jail had not followed its written policy. He also testified, however, that he has now taken measures to assure inmates are afforded due process. Both Rupert's and Mills's testimony weigh in favor of awarding Rupert only nominal damages. Third, however, Rosamond explained that the jail's failure to provide due process was pervasive. In fact, it appears that the jail's written policy was worthless and that the jailers either had no knowledge of the policy or had no intention of following it. This testimony weighs in favor of awarding even more than $5750 to Rupert. Therefore, when these three pieces of evidence are weighed, $5750 is sufficient to compensate Rupert for his due process violation while not being so severe as to

be punitive.                          III.  CONCLUSION

For the reasons set forth above:

1.       Verdict is entered for defendant Susan Cox on plaintiff Prentis Rupert's deliberate indifference claim.

2.       Verdict is entered for defendant Larry Mills on plaintiff Prentis Rupert's due process claim against Mills in his individual capacity.

3.       Verdict is entered for plaintiff Prentis Rupert on his due process claim against defendant Larry Mills in his official capacity.  Because a claim against the sheriff in his official capacity is a claim against the county, Rupert is awarded damages in the amount of $5750 against Poinsett County, Arkansas.

IT IS SO ORDERED this 2nd day of September 2016.

_____
UNITED STATES DISTRICT JUDGE